## COMMISSIONER OF INTERNAL REVENUE v. NEAVES.

### No. 7736.

Circuit Court of Appeals, Ninth Circuit.

Feb. 10, 1936.

Frank J. Wideman, Asst. U. S. Atty. Gen., and James W. Morris, Sewall Key, Lucius A. Buck, and Maurice Mahoney, Sp. Assts. to the Atty. Gen., all of Washington, D. C., for petitioner.

Allen Spivock, of San Francisco, Cal., for respondent.

Before GARRECHT, DENMAN, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

This case comes to us from the Board of Tax Appeals, upon petition of the Commissioner to review a decision of the Board holding "that there is no deficiency for the calendar year 1928." A deficiency had been determined by the Commissioner against the taxpayer, who appealed to the Board of Tax Appeals.

It appears that in 1928 respondent was the owner of 80 shares of common stock of United Wire & Supply Company, which had been acquired December 29, 1926, at a cost of $1,600, and 150 shares of preferred stock of said company acquired in 1917 by gift from her father, which stock had a cost of $15,000. The respondent, a resident of California, kept the stock in a safe deposit box in Providence, R. I., to which her brother, who acted for her in business transactions under power of attorney, had access. In the latter part of 1928 the respondent was advised by her brother to sell the 80 shares of common stock and 150 shares of preferred stock of United Wire & Supply Company, to which she assented, but she had no knowledge to whom the stock was to be sold. On December 18, 1928, respondent's said brother sold the stock to respondent's father, receiving therefor $240 for the 80 shares of common stock and $6,545 for the 150 shares of preferred stock, and said amounts were paid to respondent by check of her father in the amount of $6,785 and deposited to respondent's account in the Phenix National Bank of Providence, R. I.

There was no agreement or understanding between respondent and any other person that she could or would purchase back said stock or any part thereof, and the said sale price of $6,785 represented the prevailing market price of the stocks at the time of said sale. The said stock so sold or similar stocks were reacquired by respondent in May, 1929.

In her income tax return for 1928 respondent claimed a loss of $1,360 on the sale of the 80 shares of common stock, and a capital net loss of $8,455 on the sale of the preferred stock, both of which claims the Commissioner disallowed on the ground that the transaction was not a bona fide sale.

The respondent was the only witness to appear before the Board.

It is the contention of petitioner that the taxpayer had the burden of overcoming the "presumption in favor of the correctness of the Commissioner's determina-tion"; that she "had an added burden of proof because, (a) she was claiming the benefit of a deduction provision of the Revenue Act; (b) the transaction was with members of her family; and (c) the stock was repurchased during the following tax year." Petitioner argues that the taxpayer's evidence was wholly insufficient to carry her burden of proof.

Section 23(e)(2) of the Revenue Act of 1928, 45 Stat. 791 (26 U.S.C.A. § 23 note), provides that a deduction shall be allowed an individual in computing net income where a loss is sustained during the taxable year and is not compensated for by insurance or otherwise, "if incurred in any transaction entered into for profit, though not connected with the trade or business." Section 118 of the same act (26 U.S.C.A. § 118 note) provides that no deduction for the loss shall be allowed under the above section 23(e)(2), "where it appears that within thirty days before or after the date of such sale or other disposition the taxpayer has acquired (otherwise than by bequest or inheritance) or has entered into a contract or option to acquire substantially identical property."

█ Respondent's brief says: "The motive for the sale was apparently to secure a tax reduction and the taxpayer's right to do this cannot be questioned. * * *" The cases on the subject bear out this contention. "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 97 A.L.R. 1355. The Circuit Court of Appeals for the Second Circuit has said, in Commissioner v. Dyer, 74 F. (2d) 685, 686: "Any one is privileged to arrange his affairs so that his taxes shall be as low as the statute permits. * * * But the statute does not permit deduction of a loss claimed to have been sustained in a sale of stock where within thirty days before or after the date of such sale the taxpayer has entered into a contract or option to acquire substantially identical property and the property so acquired is held after such sale."

█ The burden of proof to establish a deductible loss and the amount of it was upon the taxpayer. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991. The taxpayer here established her loss by a showing of a sale, which the Commissioner held not to be an absolute

sale, and further held that the losses were not of such a nature as to render them deductible for purposes of taxation. "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623. While the determination of the Commissioner is not conclusive, it is prima facie correct, subject to being proven otherwise by the taxpayer. Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184.

 The transaction, being between members of the same family, is subject to somewhat close scrutiny (Appeal of P. B. Fouke, 2 B.T.A. 219; Uihlein v. Commissioner, 30 B.T.A. 399, 402), but it is not, by that reason alone, to be held to lack good faith. If there was no agreement for the repurchase or return of the stocks, made within 30 days either way of the transaction, then the sale must be held to have been made in good faith. However, even though the repurchases were made beyond the 30-day period, such repurchases are not thereby validated if they were part of an original plan, and they are thereby ineffective to produce deductible losses. Shoenberg v. Commissioner (C.C.A.) 77 F.(2d) 446, 450.

While the transaction in this case may have been viewed with suspicion, it was not necessarily fraudulent. It may even have been entered into for the very purpose of avoiding the tax (although the testimony is otherwise) and yet not be rendered "ineffective to produce deductible losses," if there was no agreement for return or repossession.

The taxpayer positively testified that she did not know who the purchaser was and that she did not have any intention of repurchasing the stock at the time. This, if believed, was sufficient to overcome the prima facie presumption of correctness in favor of the Commissioner's determination. If the Commissioner claimed that the transaction was fraudulent, it was his duty to prove the fact. "There was nothing unlawful, or even mildly unethical, in the motive of petitioner, to avoid some portion of the burden of taxation. * * * If the transaction were attacked as fraudulent, the burden would be upon the Commissioner to establish such fraud by a clear preponderance of the evidence." Marshall v. Commissioner, 57 F.(2d) 633, 634 (C.C.A.6). "It is a general principle that fraud is never to be presumed, and he who avers

it, takes upon himself the burden of proving it." Budd v. Commissioner, 43 F.(2d) 509, 512 (C.C.A.3).

If the Commissioner meant to imply that the transaction was a sham and fraudulent, he did not attempt to prove it. The only witness before the Board was the taxpayer. It is the rule of this court that a "finding of the Board of Tax Appeals must be sustained if based upon any substantial evidence," and "we are bound by the decision of the Board, where the evidence does not compel a contrary conclusion." Old Mission Portland Cement Co. v. Commissioner, 69 F.(2d) 676, 679 (C.C.A.9). See, also, Commissioner v. Gerard, 75 F.(2d) 542, 544 (C.C.A.9).

There was substantial evidence which afforded a basis for the finding of the Board, and it does not compel a contrary conclusion; therefore the decision of the Board of Tax Appeals is affirmed.