286

**CARPENTER v. GAGNE, Collector of Internal Revenue.**

District Court, D. New Hampshire.
April 6, 1939.

As Amended June 15, 1939.

McLane & Davis, of Manchester, N. H., for plaintiffs.

Leon F. Cooper, Asst. Atty. Gen., and Alexander Murchie, Dist. Atty., of Concord, N. H., for defendant.

MORRIS, District Judge.

This is a jury waived action at law filed January 13, 1938, to recover the sum of $29,189.92 with interest, alleged to have been erroneously and illegally assessed and exacted from the plaintiff on account of the taxpayer's income taxes for the years 1932 and 1933.

The plaintiff, complying with the Revenue Act of 1932, 47 Stat. 169, filed with the Collector of Internal Revenue for the District of New Hampshire on or about January 20, 1933, his individual income tax return for the calendar year ending December 31, 1932. On or about March 15, 1934, he filed his individual income tax return for the calendar year ending December 31, 1933.

In his return for 1932, the plaintiff claimed as a deduction a capital loss of $194,221, resulting from the sale on December 21, 1932, of 2,000 shares of Brown Company 6% preferred stock. It is alleged that the sale was made through a reliable broker at a publicly advertised auction and was a bona fide sale, resulting in the loss claimed. The deduction of the above amount was disallowed, resulting in a deficiency assessment.

In his return for 1933 the plaintiff claimed as a deduction a capital loss of $186,221, resulting from the sale on October 4, 1933, of 2,000 shares of Brown Company 6% preferred stock. It is alleged that this sale was a bona fide sale made in the same manner as above.

The taxpayer's returns for the years 1932 and 1933 were audited by a government field agent in 1935 resulting in a disallowance of each of the deductions above mentioned on account of losses claimed to have been sustained by the sales of the Brown Company stock. The disallowances were approved by the Commissioner of Internal Revenue and deficiency assessments were made. A notice and demand for the deficiency assessment plus interest was made upon the plaintiff and the same was paid on November 13, 1935, under protest.

On August 23, 1937, the plaintiff filed with the Commissioner of Internal Revenue a claim for refund of such portion of said deficiency assessments as resulted from the disallowances of the losses as set out above being a claim for the refund of $18,593.41 plus interest for the year 1932 and $10,596.-51 for 1933. On December 31, 1937, the Commissioner rejected the claims for refund and so advised the plaintiff. No part of said claims have been paid and this action is brought to recover the same.

Frank P. Carpenter, plaintiff in this case, died April 13, 1938. He was 92 years of age but he had always made out his income tax returns without assistance so far as appears.

On May 18, 1938, Mary C. Manning and Aretas B. Carpenter, son and daughter of Frank P. Carpenter, qualified executors of

his estate, were substituted as party plaintiffs in this action.

In 1932 and subsequent thereto Frank P. Carpenter was the owner of a block of Brown Company 6% accumulative preferred stock, which he purchased for cash in 1928, paying therefor 95½ cents on the dollar. The stock had deteriorated in value and he wished to take a loss on account of 2,000 shares of the stock in his income tax return for the year 1932. On December 13, 1932, he consulted a lawyer as to a possible method of procedure. He was advised that R. L. Day Company, a reliable brokerage firm in Boston, held weekly auction sales of stock and that a sale might be made through this company. In accordance with the suggestion of counsel arrangements were made to place 2,000 shares of the Brown Company stock on sale. Frank P. Carpenter and Aretas B. Carpenter went to Boston and made arrangements for the sale and Aretas B. Carpenter left an order for the purchase of this stock at the market price. ·The transaction herein referred to as a sale was carried out according to the arrangements. The auction was held December 21, 1932, and the stock was struck off to Aretas B. Carpenter for $3 per share. R. L. Day & Company made return of the sale to Frank P. Carpenter crediting him with $6,000 proceeds of the sale and charging him $100 commission and revenue stamps amounting to $120, sending him a check for the balance. At the same time Aretas B. Carpenter was notified of the purchase of 2,000 shares of Brown Company 6 per cent preferred stock for $6,000 plus a charge of $100 commission. Aretas B. Carpenter sent his check for $6,100 in the morning of December 22, 1932.

Later in the same day he told his father that he had mailed his check for the stock and thereupon Frank P. Carpenter wrote his check for the same amount, $6,-100, and laid it on his son's desk. In discussing the matter with the field agent, at the time of the audit of his return, Frank P. Carpenter stated that he wanted Aretas to have the stock. This check Aretas B. Carpenter cashed for his own account. Frank P. Carpenter took a loss on the sale of stock in his 1932 tax return of the difference between the stock at par (100) and $3 per share amounting to $194,221. He should have computed it on the difference between the cost price 95½ and $3.00.

In 1933 the same procedure was followed. Frank P. Carpenter placed 2,000 shares of Brown Company stock with R. L. Day & Company for sale at its auction held on October 4, 1933. An order to buy at the market price was left by Aretas B. Carpenter. The arrangements were made by Frank P. Carpenter, Aretas B. Carpenter was not present. The stock sold for $7 per share. Return was made accompanied by a check to Frank P. Carpenter, a bill was sent to Aretas B. Carpenter, who sent his check to R. L. Day & Company for $14,100. Frank P. Carpenter reimbursed his son for the same amount. He took a loss on his income tax return of $186,221 computing the same on the basis of par as was done in 1932.

For many years Frank P. Carpenter and his family have been interested in the Brown Company. Until 1928 they owned practically all of the preferred stock and the Brown family the common stock.

The son Aretas B. Carpenter was financially able to make purchases of these securities without any financial assistance from anybody. At the time these purchases were made he paid for them from his own available cash on hand without the necessity of liquidating any of his assets to do so. So far as it appears Frank P. Carpenter, the father, had never made a gift of money to his son.

Plaintiff's claim for 1933 is greater·than the payment of $5,394.82 plus interest on November 15, 1935, and the Government has, in its answer, set up the statute of limitations in so far ·as the claim is in excess of the November 15, 1935, payment. The plaintiff concedes this point.

If, in the future, it should be found that the ruling of this Court is erroneous and that the plaintiff is entitled to recover it will be necessary to make computations to determine the exact amount to which the estate is entitled.

I find that it was the purpose and intention of Frank P. Carpenter to make a transfer of the stock in question in such a manner as to make it appear that he was entitled to a loss on its sale without transferring it outside the members of his own family and that while in form a sale, in fact, it was a gift from Frank P. Carpenter to his son Aretas B. Carpenter.

The different steps taken were carried out as a single transaction in accordance with the purpose and intention of the taxpayer and it seems unimportant as to whether his son knew in advance of his father's intentions.

I find that Frank P. Carpenter did not sustain a deductible loss by reason of his transactions within the provisions of the Revenue Act of 1932, c. 209, § 23, 26 U.S. C.A. § 23.

### Rulings of Law.

Counsel for the defendant makes special requests for certain rulings of law as follows:

(a) That the transfer of the plaintiff's decedent to his son, Aretas B. Carpenter, of 2,000 shares of Brown Company 6 per cent preferred stock in December, 1932, and the transfer by him to his said son of 2,000 shares of stock of said company in October, 1933, were not bona fide sales of the said shares of stock but were, in fact, gifts thereof made by the decedent to his son.

 I rule that while the transaction was in form, a sale, that, in fact, it constituted a gift and was so intended by the donor.

(b) and (c) That the plaintiff's decedent did not sustain a capital loss in the year 1932 in the sum of $194,221 and in the year 1933 in the sum of $186,221 or a loss in any other amount, by and as a result of the transfer by him in October, 1933, and December, 1932, of 2,000 respectively of the Brown Company 6 per cent preferred stock to his son. I so rule.

(d) That the Commissioner of Internal Revenue properly disallowed the deduction of the sum of $194,221 taken by the plaintiffs' decedent in his income tax return for the year 1932 and the deduction of the sum of $186,221 taken by him in his income tax return for the year 1933 as losses allegedly resulting from sale of the Brown Company 6 per cent preferred stock to his son. I so rule.

(e) That the Commissioner of Internal Revenue has lawfully and correctly determined the plaintiffs' decedent's taxable net income for each of the years 1932 and 1933. I so rule.

(f) That the plaintiffs have failed to establish that decedent's taxable net income for either of the years 1932 and 1933 was less than determined by the Commissioner of Internal Revenue. I so rule.

(g) That the income taxes for each of the years 1932 and 1933 sought to be recovered by the plaintiffs in this action were lawfully and correctly assessed by the Commissioner of Internal Revenue and legally and properly collected from the plaintiff's decedent by the defendant Collector. I so rule.

(h) That the pleadings and all the evidence in this case, with every inference of fact favorable to the plaintiffs that, reasonably, may be drawn therefrom are insufficient to support a judgment in favor of the plaintiffs and against the defendant herein.

I cannot say what inferences others might draw from the facts reported. I can only say that I hold that the pleadings and evidence are insufficient to support a judgment in favor of the plaintiffs.

(i) That, on the facts and the law, the judgment of the Court must be in favor of the defendant herein, and against the plaintiffs, and the plaintiff's complaint must be dismissed at the plaintiffs' costs.

I rule that the judgment of the Court must be against the plaintiff and that there may be a verdict for the defendant without costs. It is so ordered.

I cannot help calling attention to what appears to be unnecessary duplication in the requests for rulings of law but as they have been made as special requests I have considered each one separately.

 In view of the fact that the transactions with reference to the Brown Company stock have always been conducted by Frank P. Carpenter, whether for his personal holdings or those of his family, I cannot help reaching the conclusion that the instant transactions were conducted with the purpose and intention of retaining the family ownership of the stock without any contribution from the son and that that purpose was accomplished through the medium of a purported sale with the idea of establishing the market value of the stock. We must consider the intention of the taxpayer and the result obtained rather than the outward form. The principle that substance and not form should be the test in this class of cases is well founded and it is the principle that has determined my rulings in the instant case. S. A. MacQueen Co. v. Commissioner, 3 Cir., 67 F.2d 857; Du Pont v. Deputy, D.C., 23 F.Supp. 33; Helvering v. Gregory, 2 Cir., 69 F.2d 809; Slayton v. Commissioner, 29 B.T.A. 931.

One of the cases relied upon by the plaintiffs is Commissioner v. Behan, 2 Cir., 90 F.2d 609. I have given the case careful consideration. There appear to be material facts which influenced the decision in that case that quite distinguishes it from the case at bar.

A verdict may be entered for the defendant.